Benjamin Brenner, J.
This application for judicial approval of a certificate of incorporation submitted in behalf of some 21 distributors of milk is opposed by the Attorney-G-eneral on the ground that the true purposes of said distributors are to elimi *739 nate all competition, price wars, the stealing of customers and the exercise of monopolistic control by them of milk distribution to grocers, restaurants, hotels and hospitals in this city.
The certificate has aroused suspicion because of the inclusion of the following stated purpose: “ To aid one another and the milk industry as a whole by seeking to eliminate abusive and disruptive business practices and unfair competition that may be prevalent therein. ’ ’ This language does not directly authorize an activity prohibited by the Federal or State anti-trust laws but, according to the Attorney-General, approval should be withheld because the language used and the purposes enumerated are but a cover for unlawful purposes, truly intended. Clearly, then, we do not have here a certificate which on its face recites an unlawful purpose as was the case in Matter of Excavating Mach. Owners Assn. (25 Misc 2d 419).
The hearings conducted before me produced much doubt that organizational representation at labor negotiations and at hearings before governmental agencies dealing with milk problems is the petitioner’s true and central purpose. Even if true, I am less than satisfied that organizational representation would be more effective, assuming it were to be permitted at labor negotiations and public hearings. Apart from this, it is unquestionably the fact that price fixing and allocation of territory would be most desirable to these independent dealers whose distribution activities are unlike those of larger milk dealers who process the product and deal directly with the public. And the fact that 7 of the 21 members seeking to incorporate have been named in a prior antitrust case does not lessen the suspicions that have been aroused about the true motives of the incorporators.
They insist, however, that no wrongdoing was established in that suit which ended in a consent decree and that their present true purposes are (1) to be represented at labor negotiations, ,(2) to be represented at hearings before the New York State and Federal Departments of Agriculture and the Department of Health of the City of New York and (3) to inform and educate members as to the rules and regulations promulgated by the governmental agencies. Indeed, the incorporators go so far as to indicate their willingness to forego any language contained in the certificate which may be deemed to be legally objectionable.
In Matter of Association of Freedom of Choice v. Shapiro (9 N Y 2d 376, 382) the Court of Appeals enjoined Special Term from indulging in “ personal predelictions as to the purposes of a proposed corporation ’ ’ and from imposing ‘ ‘ personal views as to the social, political and economic matters involved ” par *740 ticularly where ‘ ‘ no evidence is taken ’ ’ in the proceeding. Though I have taken evidence I am, nevertheless, restrained from speculating as to the economics of the situation. It follows, too, that I cannot prejudge guilt or exercise ‘ ‘ judicial objectivity ’ ’ on pure doubt however much I may share that douibt or suspicion with the Attorney-General.
In the circumstances the certificate will be approved to the extent that the purposes shall be confined solely to the three-above enumerated, provided that the clause recited in the certificate which prohibits practices enjoined by section 340 of the General Business Law shall include a prohibition of activities which shall or do have the effect of reducing competition, eliminating price cutting or price differentials, registering or filing of customers of members, allocating such customers or territories and disseminating credit information to its members.